IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs June 26, 2018

**STATE OF TENNESSEE v. JAMES ALLEN JENKINS**

**Appeal from the Criminal Court for Sullivan County**
**No. S63886     James F. Goodwin, Judge**

**No. E2017-01983-CCA-R3-CD**

**ROBERT H. MONTGOMERY, JR., J., concurring in part, dissenting in part.**

I agree with the majority's conclusion that the Defendant-Appellant is not entitled to relief from his convictions. However, I write separately to address the admission of evidence during Tennessee Bureau of Investigation (TBI) Agent Michael Turbyville's testimony related to CODIS and DNA profiles contained in CODIS. I conclude that the evidence was not hearsay because it was not offered to establish the presence of the Defendant-Appellant's DNA on the cigarette butt found at the scene. Agent Turbyville's testimony, in addition to other witness testimony, regarding CODIS and DNA profiles was offered to explain why the investigating officers obtained a sample of the Defendant-Appellant's DNA, which, upon analysis by Agent Turbyville, matched the DNA profile on the cigarette butt.

The record reflects that evidence related to CODIS and the possible DNA match of the Defendant-Appellant to the DNA profile on the cigarette butt was offered before TBI Agent Turbyville testified at the trial. Without a pretrial motion to exclude on the basis of hearsay or a contemporaneous objection at the trial, Bristol Police Sergeant Jason McCreedy testified that Agent Turbyville notified him of a "possible [DNA] match" in CODIS to the Defendant-Appellant. Sergeant McCreedy stated that Agent Turbyville provided possible dates of birth for the Defendant-Appellant, that the Bristol Police Department "followed up" and spoke with the Defendant-Appellant, and that the Defendant-Appellant voluntarily provided a sample of his DNA for analysis. Sergeant McCreedy stated that the TBI analysis reflected a DNA match between the known sample provided by the Defendant-Appellant and the profile obtained from the cigarette butt. Sergeant McCreedy said he spoke to the Defendant-Appellant based upon the information provided by Agent Turbyville.

Also before TBI Agent Turbyville testified, TBI Agent Charly Castelboun testified that she obtained a complete male DNA profile from the cigarette butt and that the police did not have a known suspect from whom a DNA sample could have been obtained and compared to the profile obtained from the cigarette butt. Agent Castelboun explained, without a hearsay objection from the defense before or during her testimony, that CODIS was a database containing DNA profiles, in relevant part, from anyone convicted of a felony. The parties stipulated at the beginning of the trial that the Defendant-Appellant was a convicted felon. Agent Castelboun stated that another analyst, who was identified as Agent Turbyville, was responsible for the "running of the CODIS database."

TBI Agent Turbyville testified that after TBI Agent Castelboun found the complete male DNA profile on the cigarette butt, the profile was "[run] through CODIS." When the prosecutor asked Agent Turbyville to explain CODIS, the defense objected, and a bench conference was held. The defense argued for the first time that any reference to the CODIS "hit" and to the database was inadmissible hearsay, even though this information was established previously when Sergeant McCreedy explained the path of the investigation. The prosecutor argued at the bench conference that Agent Turbyville could rely "on that as part of his, of what he did and how he came to complete what he did." The prosecutor stated that she only wanted to establish generally what CODIS was and that "there [was] a hit or however their terminology is with regard to the [Defendant-Appellant] because that's how we get to the next part." Based upon the record, the "next part" referred to by the prosecutor was the police officer's interviewing the Defendant-Appellant, obtaining a DNA sample from the Defendant-Appellant, and submitting the known sample for analysis and comparison with the DNA profile from the cigarette butt.

Agent Turbyville testified that the DNA profile obtained from the cigarette butt "hit in the CODIS database" to the Defendant-Appellant, that he completed a report showing the results from the CODIS search, and that the report was sent to the Bristol Police Department stating the results of the search. The report was received as an exhibit and reflects that the DNA sample obtained from the cigarette butt was "searched against the CODIS database and a *possible match* was detected. *The information being provided is an investigative lead only*. In order to confirm this, a . . . sample from [the Defendant-Appellant] must be submitted for DNA testing." (emphasis added). Agent Turbyville said that after the report "identif[ied] [the Defendant-Appellant] as a possible match," he received a known DNA sample from the Defendant-Appellant for analysis. As a result, the record establishes that the evidence at issue was not used to prove the presence of the Defendant-Appellant's DNA on the cigarette butt or his guilt but, rather, to show how the police furthered its investigation and developed the Defendant-Appellant as a potential suspect and why Agent Turbyville compared the Defendant-Appellant's known DNA sample to the DNA profile obtained from the cigarette butt. *See* Neil P. Cohen, et al., *Tennessee Law of Evidence* § 8.01[7] (6th ed. 2011) (discussing nonhearsay to show the

effect on the listener in police investigations); *see also State v. Miller*, 737 S.W.2d 556, 558-59 (Tenn. Crim. App. 1987) (concluding that a police officer's testimony about statements made to him by witnesses were offered to show why the officer took particular actions and that, as a result, were not hearsay). Therefore, I conclude that the trial court did not err by admitting the evidence.

In reaching this conclusion, I have not overlooked that initially during Agent Turbyville's testimony, the prosecutor's questions referred to whether CODIS found "a match" to the DNA profile obtained from the cigarette butt. However, the prosecutor later referred to, and Agent Turbyville referenced, this as a "possible match," and Agent Turbyville's initial report reflected a possible DNA match. Agent Turbyville testified that, based upon the initial report generated by CODIS, a sample of the Defendant-Appellant's DNA was obtained by the police and compared to the DNA profile found on the cigarette butt. Although the prosecutor used imprecise language, the record reflects that the evidence related to CODIS was not offered for its truth to establish the presence of the Defendant-Appellant's DNA on the cigarette butt found at the scene but, rather, to establish the progression of the police and forensic investigation. The Defendant-Appellant's arrest and identity as the perpetrator were not based upon the CODIS results. The Defendant-Appellant's arrest and identity were based upon the comparison between the DNA sample the Defendant-Appellant voluntarily provided and the DNA profile obtained from the cigarette butt. As a result, I conclude that the evidence offered during Agent Turbyville's testimony was not for its truth and that it was not hearsay. In all other respects, I concur with the majority.

_____
ROBERT H. MONTGOMERY, JR., JUDGE